Good morning, everyone. The first argued case this morning is No. 15-1180, Amdocs of Israel Limited v. Openet Telecom, Inc. Mr. Walden. May it please the Court. My name is Calvin Walden and I represent the appellate Amdocs. We've reserved three minutes for rebuttal. The District Court's decision to invalidate Amdocs patents under Section 101 should be reversed because the District Court erred at both steps of the Alice analysis. To illustrate how, I would respectfully ask the Court to refer to Claim 1 of the 984 patent, which is set forth at page 22 of Amdocs' opening brief. The invention claimed in the 984 patent, like the other patents that bring us here, provided a novel solution to problems arising in packet-based networks by taking various network devices distributed throughout the network, such as routers, servers... Is the problem that you describe peculiar to the use of Internet or computers? Yes, we submit that the problem is peculiar to the Internet for at least three different reasons. Did the problem exist before, let's say, the advent of the Internet? No, the problem did not. Can you describe that for us? Certainly so. The Internet, unlike what came before traditional telephony networks, the Internet is a packet-based network. So instead of setting up a single circuit to, for example, make a telephone call from New York City to Buffalo or wherever, you instead send packets through a network that has various devices distributed throughout the network. So that is the first difference. The packets don't travel in a single circuit. They are multiple packets that are sent along different routes normally. Another difference is that... But with telephony, weren't, for example, a telephone call broken down into electrical impulses so that you don't... So you kind of have the mini packet or the broken down packet situation with telephones as you do with what you describe here. Well, the difference is that in a telephone call, you set up a single, what's called a single circuit. So you set up a line between the two geographic endpoints where the conversation is going to take place. That circuit stays open until the conversation is completed. And so whatever information or whatever conversation that you and the recipient have is all over that circuit. It goes from me to you and from you to me over that circuit. And so when it comes time to make a record of that conversation for billing or for whatever purposes, it's simple. And the patents explain why. Because you've got that single circuit that opens. You know when it opened. You know when it closed. You know the addresses of the to and the from because it's a static telephone number. And therefore, it's easy by essentially listening in essentially on that conversation at a single location to get the information that you need to generate a useful billing record. In a packet-based system, on the other hand, you don't set up that circuit. But instead, every single time you send and receive information, you should receive packets across the Internet. It can take one route one time. The next time you speak, the packets may take a different route. It all depends on the Internet and the intermediate devices and how it gets routed. And so unlike the telephony network, you don't have that circuit, that single place where you can find a switch and say, okay, we can analyze that conversation. So what's the problem? What's the problem that the patent resolved here? Well, the problem is the problem that's posed by the Internet. When you're sending packets over this disparate non-centralized system, it's hard to track who's doing what on the system. It's hard to track how many times that a user is downloading data. It's hard to track where data is coming from and going to. There's other problems that are unique to the Internet. It's a layered system, meaning there's a physical layer. There's what's called a MAC layer. There's higher layers. Different components on the system speak to each other using different languages and different protocols along these different layers. So again, that presents a unique problem that the Internet has given to service providers in how to account for those different layers. The district court seemed to think not so much that you hadn't come up with something that was new and elaborate and complex and filled a need, but that your claims were so general and so broad that there wasn't anything other than a generalized statement of a solution or of a problem. Right. Well, we submit that the district court did not accurately recognize, in her second opinion, the inventive contribution that these patents have added. Or that the inventive contribution was not included in the claims. It seems to be more of what the court came up with. That is correct. That is what the district court found the second time. We submit that was error because the abstract ideas that the district court formulated for these claims was not, in our opinion, or we submit was not an accurate reflection of those claims. So for example, the 984 patent claim one, she said, was directed towards reporting on the collection of network usage information from a plurality of network devices. Or that perhaps the claims were so broad, your opponent says that they're not infringed because it's being done differently, and yet the claims do seem to be directed to the concept. Perhaps being the first to solve the problem is an entitlement to breadth, but isn't this what seemed to trouble the district court? I think that's accurate, that it did seem to trouble the district court. But we submit the district court erred when it did not account for its own prior decision. This is the second appeal of this case. We were up before your Honor and Judge Rayna and Judge Clevenger before on a claim construction that the court had found for each of the 984, 510, and 065 patents, three out of the four patents that brought us here. In that claim construction, the district court found that the collection of network usage data, and not only that, the processing of the data to enhance it or generate a complete record, must take place close to the source of the collection in what she called, or what the district court called, a distributed architecture. Not only did the court find this, and this was affirmed by the federal circuit, but the district court found this was a key feature of these claims that differentiated the claims from the prior art. Mr. Walden, Alice has two steps. I'm sorry, did you finish your? I did. Alice has two steps in it. As I read the district court's opinion in this case, he never reached step two, or she never reached step two, I should say. She stopped at step one. That is, she concluded that your claims were an abstract idea. Do you agree? I would say that she did at least nominally address step two. She said that these were claims that were- But she didn't find step two was satisfied, so that went away. That's correct. But she did find step one was satisfied. That is to say, you are an abstract idea. Now, help me understand. What do you think an idea is? Well, I think that you have to look to see what the claims are directed to. No, no. What is an idea? An idea is a- You can see where I'm going, because my next question is going to be, what is the meaning of abstract, as you understand it? Let's get the idea out. Okay. Idea, I believe, is a thought or a concept. In the patent context, I think an idea would be most synonymous with a concept. I'm sorry, say that again? With a concept. An idea is most synonymous with a concept. Whether a conception of something- An idea is something we have in our head, isn't it? It certainly is an idea. That's all it is, right? That's what an idea is, right? Yeah. It has no physical manifestation as such. That is correct. What do you understand? And I'm going to ask him all these same questions, so don't feel uncomfortable. What do you understand is the definition of abstract, for purposes of understanding what an abstract idea is? Right. Well, it's a very fair- This is essential to applying the Alice rule, isn't it? I think that is right. I think that is right. So how do you understand the meaning of abstract? Well, abstract is something that does not exist in the concrete world. Abstract is something that exists at a level that is not physical, I believe. And so when you have an abstract idea, not only is it in your head, but it is an idea that really is purposely in your head. It is not something that you can locate in the physical world. I believe that is what Alice is trying to get at. When they talk about the fundamental building blocks, or they talk about pre-existing business practices, those are the types of things that would be considered abstract ideas. So I take it your argument is that in claim one, which was the patent that you preferred to look at? Claim one of the 984 on page 22. 984 patent, right? Yes, sir. Your argument, I take it, is that there is a lot of physical in there. That is right. That is right. What specifically is physical in claim one? Well, in claim one, you have to collect the data from particular network devices. Those network devices are named- Collecting data is not physical, but go ahead. Well, you need to locate, as has already been found by this court in the affirmance in the first opinion, you need to locate collectors, that is software, close to the source of physical devices, and then retrieve raw data from those devices. Well, what do you think the plurality of network devices refers to? This is devices that exist on the- Is it physical? This is physical devices that exist on the Internet, and named in the limitation here, including- The information source modules? The information source- Is that physical? That is software that is physically located near the network devices. Routers, switches, firewalls. I think firewalls is probably not physical. Well, firewall- That is not in the sense we are using it here, is it? It can be. I mean, a firewall is a combination of hardware and software that performs the function of being a firewall. Authentication servers? These are physical devices that exist on the Internet. Routers? NetFlow servers? Databases? Mail servers? Radius servers? Domain name servers? Are any of those physical? All of those are physical devices that are geographically dispersed in the Internet. The use of physical devices goes to step two of Bilski, right? The physical implementation? I think under DDR, it was clear that the use of physical device was part of step two. Going back to the abstract idea of step one, if an idea is mentally held, and abstract is something that is not concrete, then wouldn't I be able to say, or anybody be able to point to any piece of software and say, that's abstract? I don't believe so. Is this what we should be looking for to determine whether at the end of the line that we can say this is the idea, this software or this patent is directed towards something that somebody thought about a long time ago? Well, I think drawing the line is difficult. It's been a difficult process, or at least the cases seem to indicate that. What do we draw the line when it comes to abstract idea? It seems that we can draw the line with physical implementation. Not only do you have physical items, the hardware and the switches and all of that, but you also have the physical implementation of data within those physical items. What about an abstract idea? Isn't everything abstract? I submit that it's not. I think under ALICE, looking at software, it is important to look at both steps of the test. And I believe our case is the right case to find that no, certainly under the second step, this software claims are not abstract. In the case of the 984, this is because you have physical devices that you have to park your software near. The patents name those devices. The patents then say you need to collect that data from those devices and process it in a very particular way, close to the source of those devices. This was a construction that this court affirmed in the last appeal. The processing must be geographically distributed close to the source. So we have left our minds, we have left the realm of just general concept or ideas, and now we're talking about something that really exists in the real world, in a geographically distributed architecture. There's some overlap between step one and step two, isn't there? I think that is... Let me ask you a question, Mr. Walden. It's a personal question. Are you an abstract idea? I am not an abstract idea. But the only way I know you're here is because I imagine you're here because I have an idea in my mind that there's some fella out there talking to me. Right on to an abstract idea. Well, it's a great question. The transition from an idea to an abstract idea is, I think, a very good question. I can have an idea of you in my mind. It's not an abstract idea, though, I would say, because you exist. We have to trust that the physical world exists, and so if I have a concept for a car, for example, that's an idea, but it's not an abstract idea. If I have a concept for a distributed architecture to utilize devices on the Internet in unconventional ways and to make data records from that that can then be pulled to a central location stored in a database, generate reports, etc., these have left the realm of the abstract, but we are now physically locating our claims and our patents in the real world, and so we submit that under the first step of the Alice analysis, when you're looking at what the claims are directed towards, it's not always that they're directed towards an abstract idea, but sometimes, like here, they're directed towards something like a distributed architecture for collecting from network devices, using those devices in unconventional ways. That's not abstract. Second part of the test, though, we submit there is overlap, because again, the question becomes, is there anything new? Have you made new use of some old technology? Have you made the Internet run better? And we submit again that that is the case. We submitted an expert declaration that explained in detail for all of our assertive claims under the second prong of the Alice test why those claims taken individually... Who's benefiting from you making the Internet run better? Is it the network service providers? The network service providers are the immediate beneficiaries, but the public is the ultimate beneficiary. If you recall, in the mid-'90s, the way that you got on the Internet was dial-up. So you would get with AOL, and you would dial up, and your service was provided that way, and you were essentially charged based on how long you had, in your telephone, hooked up to the Internet. But that did not allow service providers to understand their networks enough to provide the services and make money off of it by being able to bill for it. So by enabling service providers to monitor, to track usage of the Internet, to make unique use of that, it allowed them to provide the services to the public. I know we're running over, but just to understand what seemed to be troubling the district judge. She looks at the preamble, and it's just a method of reporting on the collection of usage, and that's the abstract idea. Then we have the collecting the communications from all of these sources, the filtering, the aggregating, the completing the records and so on, storing and reporting. What's so special about that? It seemed throughout the prior argument in here that the district judge was concerned that your principal argument as to the point at which this collection is made was what was novel or dispositive, and that somehow didn't get into the claims. Well, we submit that it is true that sometimes detailed claims can boil down to, for example, intermediated settlement, as the Alice Court found from a fairly detailed claim. But when we submit the district court, the way the district court erred was in the way that it boiled these claims down. To boil the claim of one of the 984 to reporting on network usage and information from a plurality of network devices is we submit in direct contradiction to the court's earlier construction for the term completing in this claim to require a distributed architecture. And not only that, the court had said that this was a key feature that distinguished these claims from the prior art. So to boil the claims down to a single feature that doesn't account for the distributed architecture we submit was an error. Isn't that a problem that we have in the application of Section 101 that this boiling down, that eventually you can boil down everything to an abstract, even as Judge Plager demonstrated, perhaps you're abstract? I think it presents a problem, although I think this is an issue. So what saves it then, Step 2? I think it's both. I think, though, there are categories that are clearly abstract ideas. A business method is clearly an abstract idea. The court in DDR described others as taking just a pure algorithm and implementing it on a generic computer. That is abstract. You have a case following yours dealing with a lawnmower, and there's a patent on that, on a lawnmower. Right. But the concept of cutting grass has existed for a long time. Is that an abstract idea? I would submit that it's not. I would submit that a lawnmower is a physical device and, therefore, you can boil the claim down to the concept of a lawnmower. But I would still say that's an idea, but it's not an abstract idea. How about an invention for attaching one thing to another? Is that an abstract idea? At that level, I would say that would be an abstract idea. Pretty abstract, attaching one thing to another. Attaching one thing to another, because that's, again, I don't know in the real world what you're talking about. The first claim in that invention is for a hammer and a nail. Would that be patentable? I would submit that an invention for a hammer and a nail would... No, this is an invention for attaching one thing to another, because that's the abstraction. But the actual claim is for a hammer and a nail. That's just putting aside the possible problem of obviousness. Is that a patentable invention? I would say it is a patentable invention. Why? Under the first step of the analysis, I would say that the claim is not directed towards attaching one thing to another, but instead it's directed towards a hammer and a nail. Oh, you would disagree with my characterization. But isn't it true that a hammer and a nail is for the purpose of attaching one thing to another, typically? That is the function that they perform. The question, I believe, becomes how do you claim it? If your claim is simply a method of attaching one thing to another, then that's going to be abstract. If your claim is to a hammer and a nail, then you've named physical devices, and I believe under 101 you would be satisfied with that. 102 and 103 may have some problems. All right. Let's hear from Mr. Pandya, and we'll save you rebuttal time, Mr. Walden. Thank you. Good morning, Your Honors. May it please the Court, Brian Pandya on behalf of the Appalachia Open Net. I'd like to address some of the issues that were raised with the MDOC by also turning to the language of the patent claim. If we could turn to claim 1 of the 065 patent, which appears on page 8 of our red brief. It's also at page A84 of the joint attendance. Why don't you like 984? Well, I like 984, and I'm happy to talk about that one as well. Since he put 984 on the table, why don't we stay with that one? Okay. We'll start with the 984 patent. If we look at claim 1 of the 984 patent, it's claimed here it's a method for reporting on the collection of network usage information. That's just the preamble. That just tells you this is where we are. We're not hammering a nail. We're collecting network usage information. And then there's a whole long column of details. What is being claimed here is you're collecting network communications information from sources that already have existed before the patent. What's describing is the source of the data that then gets the next step filtered, stored in a database, output as a report. This was so abstract, it seemed clear, at least to the patent examiner, that this method, with all of its limitations, was new, had not previously been practiced. And that really, in the entire argument, it hasn't been shown otherwise. So we're now just looking at how it's claimed. Isn't that right? And that it's claimed too broadly, I gather, is what concerned Judge Brinkman. It is. The breadth of this claim is what concerned Judge Brinkman. That is to Alice's concerns. Well, the breadth of the claim goes to obviousness problems, doesn't it? Or perhaps indefiniteness problems. Why does it make it abstract? Because what it's doing is preempting the idea of taking – we're going to take data from devices that already have existed, Amdocs, the specifications, that these are all generic or commercial devices, all of which exist that Amdocs did not invent them. I think it's conceded that until these inventors came along, that hadn't been done. It was an unsolved problem, and they figured out how to conduct these complicated steps of electronics, wired, wireless, and all the rest of it, to put it together in a specific way in order to achieve a new result, a long-felt need. And, again, it seemed to me that the district judge appreciated that but was concerned with the claims. She was concerned with the claims. The problem with these claims is what it describes as a source of data which does not make an abstract idea less abstract. It's describing a source of data. Good. What do you understand to be an idea, and what do you understand to be abstract? Well, I understand an abstract idea to be it's a theory. Take them one at a time. An idea. An idea is something that's a theory. It's something I have in my mind, something that can be expressed in simple terms on pencil and paper. An abstract idea is a concept. It's a theory. It's putting together two data records, storing data in a database. That's what I understand an abstract idea to be. So, at the end of the day, we can look at almost any software application and say it's abstract, correct? I wouldn't go that far. How far would you go? Well, I would go just as far as I would go. If you have an idea that involves basic computing steps, putting together two data records, storing data in a database, putting together steps, simple, routine, conventional steps that existed before, the loophole that Alice closed in Bilski was that you can't recite an abstract idea using existing computers, using general-purpose computers. You can't use post-solution activities. But it didn't strike the use of all software applications, correct? Yeah, and we do not contend that. So, somewhere along the line, there is software that is patent-eligible, correct? Yeah, I agree with that. What would you say is it something more than what we had in DDR? Well, in DDR, the claims were found patent-eligible. I mean, what would have to be patent-eligible? Would you have to give a specific solution? The problem with these claims, the 984 patent… Let's start with that. Isn't there a specific problem that the patent addresses is directed to? It does not. The issue that they're talking about is not what's reflected in the claims. The claims are incredibly broad. I mean, we look at Claim 1 of the 065 patent. It's computer… Why don't we ask the trial judge what she thought of these claims? And here's what she said. She said, Claim 1 focuses on the concept of correlating two network accounting records to enhance the first record. That was her description of that patent. Do you think that's… First of all, do you think that's a fair description? I think that's fair. And do you think that's pretty abstract? I think that is pretty abstract. It's just like Digitech, where you're taking two pieces of data, putting them together to make a new record. Frankly, it's like… Let me try another one. If I try… If I describe the same patent as all of these patents claim parts of a system that is designed to solve an accounting and billing problem faced by network service providers, would you say that's abstract? An accounting and billing problem faced by network service providers. That's pretty specific, isn't it? It adds a degree of specificity, but not enough because you're still taking the same idea of putting together two pieces of data to generate a new data record. That is what's being claimed. That's the problem. It's not addressing a new protocol. It's not addressing a new algorithm. It's taking together two pieces of data, putting the data together, and putting a new record. It's a method of organizing data. That is the problem with these claims. So, billing records could never be an invention dealing with a method to solve an accounting and billing problem faced by network service providers. That could never be a patentable invention. It would be very difficult, based on the disclosure here, based on how these claims are drafted. I'm talking about Step 1 of ALICE. Could that be a patentable invention? It would be very difficult under Step 1 of ALICE. Because it's too abstract. It's too abstract. It's an economic practice. Taking two pieces of data, putting them together. It's a fundamental idea. It's a concept. That's the problem. How about a method for curing illness? A method for curing. I want an invention that's a method for curing illness. Too abstract. It is too abstract. So, any drug on the market would not be patentable because they're all methods for curing illness. Is that right? That's not right because the difference with a drug is that you're claiming a chemical compound. You're claiming a formulation. You're claiming something that's specifically tied to a structure. In your example, to me that sounds more like aerial compounds. How is this patent not tied to the problem that network service providers had in compiling adequate data for which to build customers? Because nothing in the claims ties it to the problem. What the claim is, look at claim 1 of the 065. It's a computer code for receiving a first record from a first source, correlating the first record with the second record, using the second record to enhance the first record. That's all that's claimed. That's it. It's like a... Routers, switches, firewalls. Sure. Authentication servers, web hosts. What are all that? What's all that? That is the source of the data. So it's... It's all part of the claim. That's saying where you're collecting the data from, but that's just describing... It's describing how to implement the abstract idea. But if, in fact, it had not previously... Just to go back to the direction that Sue was trying to figure out where the barrier would be. Again, looking at the 984, there the draftsman has claimed computer code for each of these steps. So that at least that's something tangible. I'm looking at a computer program product, got a computer code for collecting, computer code for filtering and aggregating. Of course, I appreciate that if the codes were here, we'd have a 10-foot pile of paper. But even so, how does one, accepting the premise that this was an unsolved problem, because it solved the problem, you knew you had to collect information from all of these sources, put them together and correlate them when you solved that problem. So here was an unsolved problem. Here was an inventor that solved the problem. And the district court said, well, that's very interesting, but either you haven't claimed it adequately, specifically. So again, reciting computer code, at what stage, looking at all of the details that are here, would have been needed in the claims at the point, the argument brief, that what made it work was the stage, the point at which the information was collected, and that that made it feasible. Is that a fair statement of what seems to me to be an extraordinarily complex and, I gather, valuable procedure? So where, from your interaction with the trial judge, is your sense that she felt there was an inadequacy and undue breadth in the claims? Here's what troubled Judge Merkin. With the issue of preemption, what you're taking in the 984 patent we were looking at... Yeah, I'm looking at 984. So what it does is it gathers information, it processes the information, puts it in a database, outputs a report. No one did it before. I think everyone agrees this is a solution to an existing problem. Well, people have been using databases for years. Every invention preempts that gets patented, preempts something. It preempts the claim, the specific invention claimed. So the fact that it preempts something is irrelevant. The question is, does it preempt some basic principle or some basic idea that blocks the rest of the world from ever dealing with that problem? Or does it preempt a field of use? And if it preempts a field of use, that's not enough to save the claim. The problem with this claim is that it speaks, it talks about all these devices which already exist. It's taking existing data and performing routine and conventional steps and dressing the claim up that way is not under Alice, under Digitech, under Internet Patents, under SAP Versata. It's not sufficient to get the claims past Alice. That might have worked post-Bilski. That does not work post-Alice. I mean, the claim here, it almost reminds me of the claim... Where do you see the problem with the patent? Step one or two or the combination of both? It's an abstract idea under step one, and there's nothing in it. There's no specificity in it. But almost every software patent, you can say it's about collection of data, and that's an abstract idea. So would you say that all software patents are not eligible? I would not. The problem with these claims is they do not make the network function in a different way. Why aren't they all abstract ideas? That's the question. Many software patents are abstract ideas today after... But if they're all about collecting data, manipulating data, then under your view, they're all not subject to patentability. Unless you do something more than a pending, routine, and conventional step. That's step two. We're talking about step one. But I... Starting with step one. Certainly, many software patents, if we're just talking about collecting data, processing data... Isn't that a question of how you articulate the abstract idea? It's correct. If we look at the claims, the way these patents have been claimed, they haven't been specifically drawn to a packet-based network. They haven't been specifically drawn to solving a unique problem. All that's claimed is taking data from a first source, data from a second source, correlating those records to make a new record, taking data from existing devices on the network... Isn't it taking disparate pieces of data and collecting them? It's not taking an invoice here, an invoice there, an invoice there. It's taking this piece of electronic information, which may only be part of an invoice, and taking another piece of these packets that are sent out, getting them at the source, at the source of their use, and then bringing them together to form a single report in a distributed fashion. I mean, isn't that a little bit more a complex description of this patent other than to say it's simply about collecting information? It's more than that. It's more than just collecting information, isn't it? It's not. That's not what's claimed. That may have been the intent, but what's claimed here is taking two pieces of data, whether you put the data together close to where the data was gathered, far away, or somewhere in between, doesn't make the idea of putting together two pieces of data... But that's not quite fair. It's collecting data from sources, disparate sources, in a way that had not been done before. What's being claimed here is taking data from a first source and a second source. That's what's being claimed. The concern, I gather, of the district judge was that there was more insufficient specificity in the claims. Is that your perception? That was my perception. I think Judge Brinkman felt this case was like Digitech. It was like other cases where you took data, even if the data had some specificity, you're still putting together pieces of data. That is what's being claimed here. All of these devices, the specification that exists on network, what MDOCS is doing here with these claims is we look at claim one, taking data from a first source and a second source to correlate and enhance the record. Claim one of the 984 patterns... Storing the plurality of data records in a database, allowing the selection of one of the plurality of reports for reporting purposes, submitting queries to the database, utilizing the selected reports for retrieving information on the collection of the network usage information from the network devices and outputting a report based on the queries. That's all part of the claim. That is all part of the claim. That's describing a database. Do we just ignore that and say, ah, that's not important. What you were doing was collecting data. What that is is insignificant post-solution activity. That's describing a database. But that's more than what happened in Digitech too. Well, but that's, but claim one would be like, would be like ultra-mercial where we can give a lot of steps that describe what it means to put a data in a database. Would you agree that the idea of an abstract idea is abstract? In this case... Would you agree, would you concede that much for me? It's difficult. It's a difficult question. You haven't really told us what an abstract idea is. But you notice the Supreme Court hasn't either. But this is an issue the Supreme Court has been struggling with. But what the Supreme Court... And you know what? They'll continue to struggle with it because the idea of an abstract idea is abstract. That's our problem. Right? That is our, that's the difficulty here. And Judge Brinkemeyer, Brinkema, by hooking this decision to step one has created a big problem for us. Right? Well, she has not. This decision falls squarely within the other cases that have come down since Alice where if you take basic steps, collecting data, to put together two pieces of data, collecting data from existing sources to store it in a database, that is an abstraction. That's a concept. I mean, the problem, what troubles here was these claims don't say how to do it. But that's not fair. Yeah, it's not fair. It does say that it does it in a distributive fashion. And the ultimate, and it is claimed that you produce a single report. And it's a single report that's what was lacking before this invention. But it's still... At that point, when the network service provider now has a single report that indicates the amount of usage and who's doing the usage, that is not an abstract idea, is it? That is still an abstract idea. How can it be? To begin with, it's a piece of paper. It's specific information dealing with specific usage, specific charges, specific dollar amounts. You say that's an abstract idea? It is. It's a bill which has been generated by telephone companies for decades. It's an abstraction. These bills have not been generated for decades. They've only been generated since the advent of the Internet and because of the Internet. There's no need to generate these type of bills before then. But that is not what's being claimed here. What's being claimed is taking two pieces of data. Now, it may be, even if that is a useful end of the invention, that's not what's being claimed here. The problem that troubled Judge Brinkeman and troubled us too was the way these patents are claimed, the way they're drafted. Using existing devices in a conventional, predictable way to put together pieces of data. And, I mean, the claims just describe, they describe the functions, they describe what, they describe, they tell you what to do, they don't tell you how to do it. If you apply and you use conventional methods but yet your application results in innovation, then that resolves a conventional and well-known applications problem, doesn't it? I don't think it does. We talked about Digitech a few minutes ago. There was no question there that taking together the two pieces of chromatic characteristic information, spatial characteristic information, was new and improved the translation of digital images but it still is putting together pieces of data. And I think in all these cases that have come before the Court where patents have been invalidated under Section 101, there has been an argument that the invention was valuable. It's a plague on the patent system nowadays almost every other case comes in on a 101 basis. I think that the plague was that the patent office allowed too many patents particularly in the 1990s that should never have been allowed in the first place. So here we've got, I'm looking at Claim 15, it's got details A through S periodically determining whether the Netflix devices are currently licensed is detail O. By the time you get to this specificity, you certainly are removed from abstraction. There may be other problems but once you have the computer capability by setting it up in this way of collecting the data from all of the sources and putting them together, then it's easy to periodically see if something or other is licensed. But aren't we beyond abstraction? One of the things that I didn't see in the District Court's opinion although it may have been discussed during the argument was whether these steps A through S for example were in the prior art in order to then all you need is an ingenious programmer to put them together. But somewhere there was a line of abstraction it seems to me that was crossed which takes us to a number of areas of potential invalidity I suppose that the trial judge didn't reach. I think that's what concerned this court when the case was here before. And I am not persuaded that that concern was met. In terms of your first question were the elements of the prior art if we look at the specification of the patent Was that discussed at the District Court? The prior art? It was discussed. I would have assumed so even though it didn't reach us. It was discussed during the oral argument that the specifications talk about every device here it's a generic or a commercial commercially available device. We look at A39, A40 of the 984 specification I mean what the specification describes here says the gatherers are any hardware and or software that gathers data. Of course every device every mechanical device I like to use the example that you say I claim a method of increasing the gasoline efficiency of a carburetor. You could say that's whether you call it abstract or what else and then you put a whole bunch of mechanical pieces together none of which is new but it's the way they're collected and used that's new but we're no longer talking about abstraction so why is this any different? Well if we take your example if you were to claim a method of improving a carburetor in a car and you say you improve the carburetor by making it more efficient by saying this is what we want to do this is the output that probably would be an abstract idea it certainly wouldn't do you any good it wouldn't do you any good whatever you call it and so here we have a preamble which is a method of collecting data so you can build a user and that seemed to be from what the district court wrote where she stopped I don't agree with that she looked at in the first step you look at the claims as a whole in the second step she considered and recognized that every step here was using existing hardware existing software to perform routine conventional steps storing data in a database outputting a record from a database putting together two pieces of data just because you append a number of routine conventional steps to a claim that doesn't bring you over doesn't make the idea less abstract that doesn't get you over the second hurdle of the Alice test so Judge Brinkman quickly recognized the essence of the claim she noted that the distributed architecture is very broad the specification acknowledges that we talk about the plurality of layers in the 984 patent but the specification says that 839 layers can be physical or they can be applications they can be conceptual is it Pandya or Panda Pandya     of this patent as a system that is designed to solve an account problem as a system that is designed to solve an account problem as a system that is designed to solve an accounting and billing problem faced by network service providers was not abstract but you wisely argued it was because that's her description from the earlier case isn't it did you recognize that I'll take a compliment take your compliment that's an accurate description of what that if you're going to try to do a one sentence description of this invention there's nothing abstract about it that's what she thought in her first opinion that came up before on the claim construction issues that this case sent back but then in this later case she changed her view apparently and came up with that very abstract description I don't know why she did that but you at least argued both were abstract so you're consistent take the compliment thank you so the problem with these claims is that they're the fundamental problem here is they speak in functional terms they speak in generic terms collecting data putting data together all the devices the source of data does not make an idea abstract that describes the source of the data like in the cyber source case that was before this court amdocs talks about solving a packet based problem but packet based networks aren't claimed you can't read limitations in from the specification to narrow a claim and even Dr. Zagura the problem with her declaration was that she may or may not have accurately described internet billing but that's not what's being claimed amdocs is making arguments that go beyond the scope of what was actually claimed and just as Judge Brinkman recognized these claims were broad they were preemptive they were abstract that is why they were held in doubt and why we asked that decision to be affirmed. Okay. Thank you. Mr. Walden three minutes. Thank you. Your presentation is an excellent presentation and I would like    panel for their contributions and their work and I would like to thank the panel for their contributions for their contributions and I would like